Fannin *vs.* Durdin *et al.*

JAMES A. FANNIN, plaintiff in error, *vs.* JOHN DURDIN *et al.*, defendants in error.

When a proceeding was had in 1869, to reduce a judgment under the act of 1868, and the plaintiff in the original judgment took issue on the defendant's grounds, and that issue was tried by a jury, who reduced the judgment, and the plaintiff entered up a new judgment founded on this verdict, caused execution to issue, and had property sold thereunder, and participated in the proceeds, and afterwards, in 1873, moved to set aside the judgment entered up by him in 1869, on the ground that the pleadings on said motion to reduce, showed no legal ground for reduction, and that the judgment was therefore illegal:

*Held*, that having tendered an issue upon the defendant's motion, and gone to the jury on such issue, and accepted the verdict by entering up judgment thereon, etc., he is too late, after the lapse of three years, to object to the sufficiency of the motion.

WARNER, Chief Justice, dissented.

Judgments. Relief act of 1868. Statute of limitations. Before Judge BARTLETT. Morgan Superior Court. September Term, 1874.

A report of this case is unnecessary.

REESE & REESE, for plaintiff in error.

FANNIN & BILLUPS; A. G. & F. C. FOSTER; T. H. S. BROBSTON, for defendants.

McCAY, Judge.

The facts of this record do not present a case standing on the same footing as the case of *Tison vs. McAfee*, 50 *Georgia*, 382, and other cases of like character decided by this court. In these cases, my judgment was based on the idea that the judgment sought to be set aside by a motion made years after its rendition, was a *decision* of the court which made it, and that, under our law, if it was wrong, it could only be corrected by a writ of error to this court. As the party complaining had failed to file his bill of exceptions within the time prescribed by law, he could not cure his *laches* by asking the court rendering the judgment to set it aside and assign as error

Fannin *vs.* Durdin *et al.*

the refusal of the judge thus to correct his own errors.  It is obvious that this reasoning can only apply to judgments which, in their nature, are *decisions* of the judge, such as *motions* and *the like,* when the mind of the judge is expressly, or by implication, upon the point at issue, and when the judgment is his conclusion of the law upon the facts of the case.  In other words, a bill of exceptions must lie to the *judgment* or *decision;* the matter must be that which error can be assigned on.  The thing complained of must be an *error* of the *judge.*  As illustrative of what I mean, I might instance a *demurrer,* a *motion* to *amend,* a *motion in arrest* of judgment, a motion for *non-suit,* a motion to *strike a plea,* or any motion or proceeding asking and involving a *judgment, decree* or *decision* of the *judge* that could be excepted to by bill of exceptions.  In all such cases, it is my opinion, and I think it has been the uniform ruling of this court, that the party cast is barred unless he file his bill of exceptions within the time prescribed by the statute.  Indeed, the Code, in terms, so provides: section 2921.  Section 4251 even goes so far as to prescribe that if the decision be not a final one, but only interlocutory, the party complaining shall file an interlocutory bill of exceptions.  And this court has uniformly held that however erroneous such an interlocutory judgment may be, the party is concluded by it unless he file his interlocutory bill of exceptions.  To permit parties to cure their *laches,* and do afterwards what they failed to do in the manner and at the time prescribed by law, would, in my judgment, be a judicial repeal of sections 2921 and 4250 of the Code.  An error of a judge in 1869, not objected to, cannot be made the subject of a writ of error by asking the judge to correct it after the thirty days has expired, and assigning error on his refusal to do so.  But as I have said the present case stands on a different footing.  So far as appears from the record there was no *decision* of the court.  The party against whose judgment the motion was taken does not seem to have objected—there was no demurrer.  He met the plaintiff's case by taking issue on the facts; a trial was had before a

jury on that issue; a verdict was rendered, and the plaintiff in the original judgment *accepted* the verdict by entering up a new judgment according to the verdict; nay, upon that judgment he sued out execution, caused it to be levied, and had money raised and assigned to the judgment by the order of the court. In all this proceeding he never asked the judgment of the judge either by demurrer, arrest of judgment, or in any of the ways by which it is usual to get a *decision* on which a bill of exceptions will lie. For these reasons I do not put my decision in this case on the same grounds as I did in the cases referred to. But I am none the less satisfied that, under the well settled rules of law, the present movant is concluded by the judgment of reduction, and is too late now to move to set it aside. As the case presents itself, the record shows that in 1869 the defendant in the original judgment moved the court, in writing, that there were certain reasons why the judgment of 1866 was far too much, and that it ought to be reduced. The plaintiff in the judgment failed to demur to that motion; on the contrary, he denied the facts set forth, and asked a trial by jury on the issue—a trial was had, and the judgment reduced. Thereupon the original plaintiff entered up a new judgment, based upon the verdict, sued out execution, had it levied, sold property, and in a contest with other executions claimed, and received by order of the court, money on his *fi. fa.* In my judgment, he cannot now go behind all these proceedings, and move to set the judgment aside, on the ground that the defendant's motion did not contain any legal ground for lessening the judgment; that it was demurrable on its face, and that no legal judgment could be entered up on it. To sustain the right of this movant it is necessary to establish the position, that under our law every judgment, no matter how bitterly it may have been fought— no matter how solemnly it may have been rendered, is always open to attack, if it appear on its face to have been made under a wrong impression of the law : *Provided*, only, that the attack is made within the statute of limitations. I have shown,

Fannin *vs.* Durdin *et al.*

I think, that in all cases where the judgment complained of was an act of the judge, so that it might have been corrected by a writ of error, the party complaining is conclusively presumed for reasons satisfactory to himself to have acquiesced. In the case before us, however, there was no decision of the court, and a bill of exceptions would not have been good, simply because the party cast did not inovke the decision of the court.   He did not demur; he did not move in arrest of judgment.   On the contrary, he admitted the sufficiency of the grounds of the motion by taking issue on the facts, and the facts having been found against him he failed to move in arrest of judgment.   Nay, he himself entered up the judgment, sued out execution, and proceeded to enforce it.   As I have said, to justify a party who stands thus, in moving years after against a judgment, it is necessary to assert that *any* judgment now standing upon the records of any court in this state, not seven years old, or if the cause of action is not barred by the statute of limitations, may be set aside, unless upon the face of the record everything appears necessary to sustain it. If, upon an inspection of the declaration, it appear that there was not a good cause of action, or if the pleas were demurrable, the judgment may be set aside.   I do not think this is the law.   Independently of proceedings in the nature of an appeal, there was, at common law, two modes of attacking a judgment not void.   One was by motion in arrest of judgment, the other by motion to set aside for irregularity.   These two modes are both recognized by our Code: See sections of the Code, 3587, 3589.   Tidd's Practice, 512, says an irregularity consists in omitting to do something that is necessary for the due and orderly conducting of a suit, or the doing in an unseasonable time or improper manner.   In an irregularity the proper motion is to "set aside the proceedings:" Tidd's Practice, 513.   A motion in arrest must be made before the judgment is entered, and is for defects in the pleadings: Tidd's Practice, 918, 919, 928.   The codifiers are presumed to have used the words "motion in arrest" and "motion to set aside" in the sense of the common law.   In that sense they are by

no means synonymous phrases, names for the same thing. As contended in the argument, these two phrases, "motion in arrest" and "motion to set aside," refer to the same thing, and are only distinguished by the fact that one is made during the term and the other within the statute of limitations. But this is an entire mistake. At common law these two motions were used for different purposes and under different circumstances. Whilst they each had the qualification as to the time of their use, as provided by the Code, except that a reasonable time was in the place of the statute of limitations, yet they were each confined to their own specific purpose, and when the case invoked that purpose the right of the party to use them was barred accordingly, as the term, or a reasonable time, had passed. The proceedings of a court are comprehended under these two heads, the pleadings and the practice. The former are the altercations of the parties, as the declaration, the pleas, the replications, etc., etc.; the latter includes all those rules adopted by the court for securing regularity and method in its proceedings. Objections to the sufficiency of pleadings were made by demurrer and by motion in arrest of judgment. Objections for violations of any of the rules of practice were by motion to set aside for irregularity. The former, to-wit: demurrers and motions in arrest, were regulated by the rules of special pleadings, and were controlled by the precise logic of that methodical and unbending system. A demurrer, if not put in at the proper stage, to-wit: before a plea to the merits, was inadmissible, and a motion in arrest, if not made during the term at which a' verdict was rendered, came too late, because within four days the judgment was *entered up,* and could not, therefore, be *arrested:* Tidd, 928. Motions to set aside for irregularity—that is, for a violation of the rules of practice—stood on a different footing. They rested in the discretion of the court. They could not be made after the other party had acted—that is, accepted them—and their limit was a reasonable time: Tidd, 512, 515. The result of these rules was, when applied to judgments, that objections to the *sufficiency of pleadings* must always be

Fannin *vs.* Durdin *et al.*

made before final judgment, whilst objections for irregularity might be made within a reasonable time.   And this distinction was not only based on sound logic, but upon the plainest principles of justice and public policy.   The pleadings in a case are the statement to the court of the plaintiff's case and of the defendant's reply; each party, necessarily, has full notice of them, if the rules of practice as to filing notice, etc., are complied with; they are read in open court, issue is taken upon them, and if they be *insufficient*, it is trifling with the court for the party complaining to lie still and say nothing until after judgment.   Many, very many, defects that were good on demurrer are lost by taking issue and going to a jury, and all defects *of pleading* are cured by a judgment, if there be no arrest.   In other words, objections for insufficiency of pleading in a regular suit, where there is an issue and a verdict, can only be made by motion in arrest of judgment, that is, during the term when the verdict is had, since within four days the judgment is entered up and cannot be *arrested.*   Motions to set aside for irregularity, as I have said, stand on a different footing.   They are not pleadings, and do not turn on those logical and technical rules which regulate pleadings—they are questions of notice, points of practice not read in open court—no issue is taken on them; the court neither by implication or in fact passes on them, and their propriety in each case may wisely be left to the discretion of the court, having in view the principles of justice and the diligence of the parties.   I have run over the doctrine on this subject in England, so as to present the subject at a glance, without reference to the authorities.   But a reference to them will show that these distinctions are fully recognized.

Judgment affirmed.

TRIPPE, Judge, concurred, but furnished no opinion.

WARNER, Chief Justice, dissenting.

At the March term, 1867, of Morgan superior court, the plaintiff obtained a judgment against the defendant for the

sum of $530 00 principal, and $280 70 for interest. At the March term, 1869, of said court, the defendant filed a motion, under the provisions of the 2d section of the act of 1868, for the relief of debtors, to have the plaintiff's judgment reduced, on the grounds, as set forth in the motion, "that said judgment was based on a promissory note for money borrowed in February, 1859; that said money was loaned to him, the defendant, upon the faith of the property he then possessed, which has been lost without his fault or consent; that during the war he made various tenders of Confederate money, property and cotton in payment of said debt, and it was not his fault that said debt had not long since been paid off and discharged." At the May term, 1869, the issue thus made by the pleadings was submitted to a jury, and they returned a verdict reducing the plaintiff's judgment to the sum of $585 00 in currency, and a judgment was entered up for the reduced amount. At the September term, 1873, of said court, the plaintiff made a motion to have the judgment of May, 1869, reducing his original judgment vacated and set aside, on the ground that it was a *mere nullity*, that the pleadings in the motion to reduce his judgment of 1867 are so defective, that no *legal* judgment could have been rendered thereon to reduce and set aside his original judgment of 1867.

A judgment is a contract of record : Code, sec. 2716. The act of 1868, so far as it authorized the reduction of the plaintiff's judgment of 1867, impaired the obligation of *that contract*, and was, therefore, unconstitutional and void, a *mere nullity*, and conferred no *legal* authority whatever, either upon courts or people, to do any act under it which would be binding upon anybody. The 3989th and the 3594th sections of the Code declare, that "If the pleadings are so defective that no *legal* judgment can be rendered, the judgment will be arrested or set aside. The judgment of a court having no jurisdiction of the person *and subject matter*, or void for any other cause, is a mere nullity, and may be so held in any court when it becomes material for the interest of the parties to consider it." If the defendant had made a motion in the

court to reduce the judgment obtained in 1867, on the ground that the plaintiff was an "uncircumcised Philistine," and that issue had been submitted to the jury, and they had reduced the plaintiff's judgment for *that cause,* and the judgment of the court had been entered up on that verdict, could not the plaintiff have made a motion to set aside that judgment whenever it became material to his interest to do so, on the ground that the pleadings were so defective that no *legal* judgment could have been entered thereon ? The pleadings in the case now before the court are just as defective as they would have been in that case, so far as the same authorize any *legal* judgment to be entered thereon reducing the plaintiff's judgment of 1867.    There is just as much *law* to authorize a judgment on the pleadings in the one case as in the other, and none at all in either.    The error consists in the assumption that there was *any law whatever* which would have authorized any court to have rendered a *legal* judgment reducing the plaintiff's judgment of 1867, on the pleadings contained in the record.    When the pleadings in the record show no *legal* cause or ground for the rendition of a judgment thereon, a judgment, or what purports to be one, entered up on such pleadings, is a simple *nullity,* binding nobody, estopping nobody from moving to set it aside whenever it becomes their interest to do so, and cannot be *galvanized* so as to have any legal vitality whatever, however ingenious or plausible the effort for that purpose may be.    I am, therefore, of the opinion that the judgment of the court below should be reversed.