THE CENTRAL RAILROAD CO. *v.* PICKETT & BLAIR.

1 Where a declaration against a common carrier is susceptible of being construed equally as an action upon contract or an action of tort based upon an alleged violation of a public duty by the carrier, and the same is not demurred to, the plaintiff at the trial may, at his option, elect to treat it as either species of action.

2. The superior court of the county in which delivery was made to the common carrier, and in which the violation of the carrier's duty commenced, has jurisdiction of the action, although the tort may have been only partially completed in that county, and its full completion took place in another county.

3. That the name of a partnership was inverted in making a written contract, will not defeat an action brought in tort against the carrier by the partnership in its proper name.

4. If the live stock delivered to the carrier consisted of both cattle and hogs, it is not a material variance that they are described in the written contract as one car-load of cattle, the action being treated as one of tort, and not as founded upon the contract.

5. There was no error in denying a nonsuit, nor in overruling the motion for a new trial.

October 19, 1891.

Railroads. Carriers. Actions. Practice. Contracts. Torts. Jurisdiction. Misnomer. Live-stock. Before Judge MARSHALL J. CLARKE.    Fulton superior court. September term, 1890.

The declaration alleged that the railroad company had injured and damaged the petitioners in the sum of $160, for that on the 28th of December, 1887, in Atlanta, Fulton county, at the special instance and request of defendant, plaintiffs caused to be delivered to it one car-load of cattle and hogs belonging to plaintiffs, to be taken care of and safely and securely carried by defendant as a common carrier in its cars from Atlanta to Savannah, and in Savannah to be safely delivered for plaintiffs; and in consideration thereof and of

certain reward to defendant in that behalf, the defendant, being such carrier, " undertook and promised faithfully the said plaintiffs to take care of the said car-load of cattle and hogs, and safely and securely to carry and convey the same" as aforesaid.   " Yet the said defendant, not regarding its duty as such carrier nor its said promise and undertaking so made as aforesaid, did not take care of said cattle and hogs or safely and securely carry and convey the same from Atlanta to Savannah, nor there deliver the same for said plaintiffs ; but on the contrary thereof, the said defendant so carelessly and negligently behaved and conducted himself with regard to the said cattle and hogs that, by and through the mere carelessness, negligence and improper conduct of said defendant and its servants," three animals were killed and others wounded and damaged, to the amount above stated.   The plaintiffs further alleged that the defendant provided unsafe and insecure cars for the transportation of the animals, and defective engines which were so negligently and improperly managed that the animals were damaged as stated; and they prayed for process requiring the defendant to appear and answer their complaint for damages.

The opinion states the other facts.

Calhoun, King & Spalding and J. T. Pendleton, for plaintiff in error.

Eugene M. Mitchell, contra.

Lumpkin, Justice.

1. It does not clearly appear from the declaration in ·this case whether the cause of action intended to be set forth therein was founded upon an alleged breach of a contract between the plaintiffs and defendant, or upon an alleged violation of a public duty by the defendant as a common carrier.   In this respect the declaration is at least ambiguous, and is susceptible of being construed as an action of either kind.   Undoubtedly de-

fendant was entitled to be distinctly informed of the
nature of the complaint made against it, in order that
it might have a fair opportunity to make its defence,
but it neglected taking the proper step to secure this
important right by failing to demur to the declaration.
Had it done so, the court below would either have dis-
missed the cause for duplicity, or required the plaintiffs
to so shape their allegations as to leave no doubt of the
manner in which they sought to hold defendant liable.
No demurrer having been made, and the declaration
containing enough to make it good either as an action
upon contract or upon tort, it follows, we think, that
plaintiffs were left free to treat it as they deemed proper.
They elected to proceed with the action as one of tort,
and our rulings in this case are therefore made accord-
ingly.

2. Under section 3406 of the code, railroad compa-
nies are liable to be sued for injuries to person or
property in any county in which the cause of action orig-
inated. It appears unmistakably from the evidence in
this case that the injury to plaintiffs' stock began in Ful-
ton county before the train upon which they were loaded
left the city of Atlanta, and it is more than probable
this injury materially contributed to, if it did not act-
ually cause, the further damage to the stock which oc-
curred during the journey. It does not appear in what
county or counties these further injuries to the stock
took place; but as the perpetration of the tort began
in Fulton county, it seems entirely consistent both with
law and common justice that the action may be main-
tained in that county, although the tort may not have
been fully completed before the train had passed its
limits. Unquestionably, plaintiffs can sue in Fulton
county for any injury to their property actually oc-
casioned therein; and this they might do in each
county through which the train passed, for injuries in

such county sustained. But what would be the sense or propriety of thus cutting up into several actions a cause or causes of complaint which might as well be included in one, even if plaintiffs could know and prove what injury or injuries their property sustained at particular points along the journey, and in what county or counties these points were located. As so doing would be exceedingly difficult, if not altogether impossible, we see no reason why. plaintiffs should be subjected to such unnecessary hardships, especially as it could result in no fair or proper advantage to defendant. Treating the action as one for a tort, we may safely say, under the facts of this case, it originated, and was properly brought, in Fulton county.

3. The firm of Pickett & Blair shipped over defendant's road the stock that were injured, and made a written contract with defendant concerning this shipment. This contract was signed "Blair & Pickett," but there is no doubt that the same firm shipped the stock and made the contract. It requires no argument to show that the inversion of the name and style of the firm is entirely immaterial, especially when it appears, as has been shown, that the action proceeded as one for a tort.

4. For the reason last stated, it is equally clear that although the stock delivered to the carrier consisted of both cattle and hogs, it was immaterial that they were described in the written contract above referred to as one car-load of cattle.

5. No railroad company can lawfully contract against liability for injuries caused by its own negligence, and defendant did not attempt to do so in this case. That it was negligent, was proved beyond doubt, and the recovery by plaintiffs was both lawful and just. Notwithstanding the stipulation in the written contract that "the owner or person in charge of stock shall

v 87-47

give notice in writing of his claim thereof to some officer of said Central railroad or connections, or its nearest station agent, before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same, and before such stock is mingled with other stock," the plaintiffs, under the facts presented, even if they had sued upon the written contract, would still be entitled to recover, because the stock never reached Savannah, the place of destination contemplated by the contract, and the defendant had actual knowledge of the injury from the very beginning of the journey, and further, the car containing the stock was side-tracked, and the animals taken therefrom, in Macon, with defendant's express consent, thus rendering the notice, etc., mentioned in the contract, unnecessary.

The nonsuit was properly refused, and the motion for a new trial rightly denied.    *Judgment affirmed.*